# AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

## INTRODUCTION

Your affiant John M. Krieger, being duly sworn, deposes and states as follows:

1. I am a Special Agent with the Drug Enforcement Administration, and have been since July of 2012. Prior to my employment with DEA, I was a police officer for approximately four (4) years, serving with the Olivette, Missouri Police Department. In total, I have approximately eight (8) years of law enforcement experience.

2. During my tenure as a Special Agent for DEA, I have conducted narcotics and drug-related investigations involving violations of international, federal, and state narcotics laws. Currently, I am responsible for investigating crimes that involve the unlawful importation and exportation of illegal narcotics, the possession with the intent to distribute controlled substances, the distribution of controlled substances, the use of communication facilities to further these offenses, and the related crime of laundering monetary instruments, all in violation of Title 21, United States Code, Sections 841(a)(1), 843(b), 846, and 952, and Title 18, United States Code, Sections 1956 and 1957. In conducting these investigations, I have used a variety of investigative techniques and resources, which include, but are not limited to, conducting physical and electronic surveillance, monitoring court-authorized wiretaps, and managing the use of confidential sources ("CS" or "informants"). Through these investigations, my training and experience, in conjunction with conversations with other Agents, as well as other law enforcement personnel, I have become familiar with the methods used by narcotic traffickers, including, but not limited to, the methods of importing, packaging, transferring and distributing narcotics, the use of cellular telephones, the use of numerical codes, text messages, code words

and other methods of avoiding detection by law enforcement, as well as the types and amounts of profits made by drug traffickers and the methods, language and terms that are used to disguise the source and nature of the profits from their illegal narcotics dealing. I also have experience in debriefing defendants, co-conspirators, witnesses, and informants who have been involved in unlawful drug trafficking activities.

3. I have personally participated in the investigation set forth below. I am familiar with the facts and circumstances of the investigation through DEA and other law enforcement personal participation; from discussions with other agents of the DEA and other law enforcement; from my discussions with witnesses involved in the investigation; and from my review of records and reports relating to the investigation. Unless otherwise noted, wherever in this affidavit I assert that a statement was made, the information was provided by another DEA Special Agent or Task Force Officer, or another law enforcement officer (collectively "Agents"), or witness who may have had either direct or hearsay knowledge of that statement and to whom I or others have spoken or whose reports I have read and reviewed. Such statements are among many statements made by others and are stated in substance and in part unless otherwise indicated.

4. This statement is made in support of an application for a complaint and arrest warrant for **Preston DAVIS**.

5. This affidavit is being submitted for the limited purpose of establishing probable cause in obtaining a complaint and arrest warrant for the above listed defendant. Therefore, I have not set forth each and every fact that I have learned during the course of this investigation.

2

## BACKGROUND OF THE INVESTIGATION

6. Eric Falkowski is currently the target in a DEA-led investigation into the distribution of counterfeit prescription pills in the Middle District of Florida and the Middle District of Tennessee. This investigation is being conducted jointly with DEA Orlando, DEA Nashville, Osceola County Investigative Bureau (OCIB), Osceola County Sheriff's Office (OCSO), and the Federal Bureau of Investigation. As set forth below, Falkowski is a member of a drug trafficking organization (DTO) that imports substances, to include several Schedule I, Schedule II and Schedule III substances, including, but not limited to fentanyl, butyryl fentanyl, ethylone (3,4-methylenedioxy-N-ethylcathinone), pyrrolidinovalerophenone (PVP), and testosterone, into the United States. Falkowski then manufactures counterfeit prescription tablets and distributes the counterfeit tablets in the Nashville, Tennessee area, as well as other locations in the United States. As set forth below, Preston DAVIS is Falkowski's co-conspirator.

7. On February 7, 2016, the Osceola County Sheriff's Office (OCSO) was dispatched to 2860 Nicole Avenue, Kissimmee, Florida for a report of an unattended death. The investigation revealed that C.B. died of a fentanyl overdose in a bedroom of the home. Several tablets were located near C.B. in the room where she was found deceased. These tablets later tested positive for the presence of fentanyl.

8. Eric Falkowski, the boyfriend of C.B., was arrested for having a small baggie of fentanyl in his pocket while OCSO was conducting their investigation. During the course of the death investigation, a State of Florida search warrant was issued for the residence. The Osceola County Investigative Bureau (OCIB) assisted the OCSO with the execution of the search warrant on February 7, 2016.

3

Case 3:16-mj-02112  Document 3-1  Filed 09/13/16  Page 3 of 13 PageID #: 52

9. OCIB investigators located a counterfeit tablet manufacturing operation that Falkowski was operating in a detached garage of the residence. Several tableting machines, thousands of tablets, bags of powders and several dies used to make counterfeit tablets were located in the garage, and were seized.

10. As a result of the search warrant executed on February 7, 2016, Agents submitted exhibits to the Florida Department of Law Enforcement (FDLE) Forensics Laboratory in Orlando, Florida, the following exhibits were analyzed and found to contain a detectable amount of fentanyl and butyryl fentanyl[1]:

    a. Exhibit Q-21 contained a detectable amount of fentanyl and weighed approximately 18 grams.

    b. Exhibit Q-23A contained a detectable amount of fentanyl and weighed approximately 21 grams.

    c. Exhibit Q-23C contained a detectable amount of fentanyl and weighed approximately 32 grams.

    d. Exhibit Q-24B contained a detectable amount of fentanyl and weighed approximately 90 grams.

    e. Exhibit Q-40 contained a detectable amount of fentanyl and cocaine and weighed approximately 111 grams.

    f. Exhibit Q-43B contained a detectable amount of butyryl fentanyl and weighed approximately 542 grams.

---

[1] Butyryl fentanyl is temporarily listed as substances subject to emergency scheduling as Schedule I controlled substances. Butyryl Fentanyl has been classified by DEA as an analogue of fentanyl under 21 U.S.C. § 813.

11. Based on the investigation, Agents believe Falkowski was manufacturing counterfeit prescription tablets to look like legitimate pharmaceuticals such as Lortab, Xanax, Oxycodone, and Percocet. Investigation revealed that Falkowski moved to Florida from Tennessee in early 2015. Based upon a review of several downloaded cellular telephones belonging to Falkowski and his suspected co-conspirators, Agents believe that after he moved to Florida, Falkowski shipped thousands of his counterfeit tablets to Tennessee for further distribution.

12. For example, on December 2, 2015, Falkowski shipped a package, via Federal Express, to S.B. in Clarksville, Tennessee. S.B. received the package on December 3, 2015, at approximately 12:47 p.m., and informed Falkowski via social media that he/she received the package. Later that day, S.B. was found dead at his/her residence of an apparent drug overdose; fentanyl was one of the drugs in his/her system when he/she died. At the scene, law enforcement recovered pills matching the pills that Falkowski was known to distribute. Later, law enforcement recovered the Federal Express packaging from S.B.'s home.

13. On August 10, 2016, a DEA confidential source (hereinafter the CS), met with Falkowski in Kissimmee, FL. The CS has no criminal record and is cooperating with the DEA for his/her financial gain. The meeting was recorded and hours of conversation between the CS and Falkowski were recovered.

14. Falkowski and the CS met on August 10, 2016. The meeting was surveilled by Agents. At approximately 2:00 P.M., the CS contacted DEA Orlando over the telephone and stated that the CS and Falkowski were at the Wal-Mart on West Vine Street, Kissimmee, Florida so Falkowski could pick up money sent to him by "Preston" in Tennessee. The CS stated that

"Preston" was one of Falkowski's counterfeit prescription tablet distributors in Tennessee.

15. At approximately 2:15 P.M., agents observed Falkowski's vehicle parked in front of the Wal-Mart located at 3183 West Vine Street, Kissimmee, Florida. Falkowski and the CS were observed exiting the Wal-Mart and leaving the area in Falkowski's vehicle. DEA Orlando later received documents from Ria Financial (on behalf of Wal-Mart). These documents showed that on August 9, 2016, Preston DAVIS sent Falkowski $600.00 from the Wal-Mart located at 3458 Dickerson Pike, Nashville, Tennessee, and on August 10, 2016, Falkowski picked up approximately $590.50 from the Wal-Mart located at 3183 West Vine Street, Kissimmee, Florida. Wal-Mart was paid $9.50 in fees for the transaction. These documents also indicated that DAVIS sent approximately $210.00 to Falkowski on August 18, 2016 from another Wal-Mart located at 109 Gallatin Pike, Madison, Tennessee.

16. Preston DAVIS' address listed on his Tennessee Driver's license is DAVIS's address is 405 B Williams Avenue, Madison, Tennessee.

17. The documents provided by Ria Financial for the transaction on August 9, 2016 list DAVIS' address as 405 Williams Avenue, Madison, Tennessee (DAVIS's address is 405 **B** Williams Avenue, Madison, Tennessee), and his telephone number as (615) 553-0291 (Agents believe based on the investigation that DAVIS' telephone number is (615) **66**3-0291). The documents provided by Ria Financial for the transaction on August 18, 2016, list DAVIS' address as 405 B Williams Avenue, which is DAVIS's address, and his telephone number as (615) 663-0291. According to toll records, (615) 663-0291 has had numerous contacts with Falkowski's telephone number, (407) 227-1227, between July 27, 2016 and August 25, 2016, but Falkowski's number is not in contact with the (615) 553-0291 number. Based on my training

and experience, I believe that on August 9, 2016, DAVIS omitted the unit number of his residence and provided a phone number that was similar but not the same as his phone number in an effort to thwart law enforcement.

18. Agents later travelled to the Wal-Mart located at 3458 Dickerson Pike, Nashville, Tennessee, and the Wal-Mart located at 109 Gallatin Pike, Madison, Tennessee and obtained video surveillance footage from August 9 and August 18, 2016, of DAVIS sending both of these money wire transactions to Falkowski.

19. On August 17, 2016, at approximately 5:23 p.m., the CS sent a text message to Falkowski asking "U already gonna have stuff for me or naw?" Falkowski responded saying "I can have stuff." Later that evening, at approximately 7:23 p.m., the CS sent another text message to Falkowski asking for "Xanax and Oxy" referring to the prescription medications Xanax and Oxycodone. Falkowski responded stating he would be able to supply the CS with the pills and that they would cost $1.00 each. The CS ordered fifty (50) of each, Xanax and Oxycodone.

20. For several days after the order was placed, the CS and Falkowski exchanged text messages discussing and planning the deal. In one exchange, the CS asked Falkowski if he would be in Clarksville, Tennessee to deliver the pills to the CS.

21. On August 20, 2016, at approximately 10:27 P.M., after a series of recorded text messages, Falkowski sent a text message to the CS stating, "Check your mailbox." The CS immediately notified DEA Nashville Task Force Agent (TFA) Fredrick McClintock of the text messages and that there may be pills in the mailbox of the CS' residence in Clarksville, TN. TFA McClintock and Agent Eddie Black (19th Judicial Task Force, Tennessee) responded to the

7

residence of the CS and recovered a grocery bag outside the mailbox of the CS' residence. Within the grocery bag were two separate baggies, one containing approximately fifty (50) of what appeared to be Xanax pills and approximately fifty (50) of what appeared to be Percocet pills. These tablets were sent to the DEA Nashville Sub-Regional Laboratory and the results indicated there was a detectable amount of fentanyl present in both sets of pills.

22. On September 1, 2016, DEA Orlando applied for and received a search warrant from the Honorable David A. Baker, United States Magistrate Judge for the Middle District of Florida, authorizing agents to track Falkowski's telephone. DEA Orlando agents provided DEA Nashville agents with access to this location information. On September 2, 2016, the location information indicated Falkowski's phone was in the Nashville, Tennessee area. Specifically, the GPS location indicated in was in the area of 405 B Williams Avenue, Madison, Tennessee, Preston DAVIS' home address.

23. On September 4, 2016, the CS arranged for a second purchase of pills from Falkowski. At approximately 12:59 p.m., the CS text messaged Falkowski stating that the CS would be in Nashville later in the day, and asked Falkowski to meet the CS. At approximately 2:00 p.m., Agents established surveillance in the area of 405 B Williams Avenue, Madison, Tennessee. At approximately 2:22 p.m., the CS sent Falkowski a text message to follow up and confirm the meeting. Falkowski agreed via text message.

24. At approximately 2:49 p.m., agents observed Falkowski walk out of the front door of 405 B Williams Avenue, Madison, Tennessee, Preston DAVIS' home address. Agents were unable to follow Falkowski after he walked out of the front door. At approximately 2:50 p.m., the CS sent Falkowski a text message that the CS was getting close to the meeting location.

8

Falkowski confirmed the meeting location via text message. Surveillance was re-established when Falkowski arrived at the meeting location in his vehicle.

25. At approximately 3:24 p.m., the CS and Falkowski met at a location in Nashville, Tennessee. During the course of an audio and video-recorded meeting that was monitored by agents from the DEA Nashville office, Falkowski provided the CS with approximately one hundred (100) tablets that appeared to be Xanax. During the course of the transaction, Falkowski told the CS he ran out of Oxycodone and only had the Xanax tablets. The tablets have not been analyzed by a DEA laboratory at this time. However, these tablets are similar in appearance to the tablets Falkowski provided to the CS on August 20, 2016, that testing confirmed contained fentanyl. Following the transaction, Agents observed Falkowski leave the area and go to a restaurant in Nashville, Tennessee. He remained at the restaurant for a period of time, and Agents terminated surveillance.

26. A review of GPS location data of Falkowski's phone revealed that he was in the area of 405 B Williams Avenue, Madison, Tennessee on September 2, 3, 4, and 5. During the late night hours of September 5th, Falkowski's phone's GPS location data showed that he initiated travel towards Florida. Falkowski's phone's GPS location data showed that he that he arrived in the Orlando, Florida area on September 6, 2016. On September 9, 2016, Falkowski's phone's GPS location data shows that he began travelling in the direction of Tennessee. Ultimately, Falkowski's phone's GPS location data showed that he arrived in the area of 405 B Williams Avenue, Madison, Tennessee, Preston DAVIS' home address, at approximately 3:00 a.m. on the morning of September 10, 2016.

9

## Search of 405 B Williams Avenue, Madison, TN

27. On September 9, 2016, Agents applied for and received a Federal Search Warrant, signed by the Honorable E. Clifton Knowles, United States Magistrate Judge in the Middle District of Tennessee, for 405 B Williams Avenue, Madison, Tennessee. Agents executed a search pursuant to the warrant on September 10, 2016.

28. Both Falkowski and DAVIS were present at the location when the search was initiated at approximately 6:56 a.m.

29. During the course of the search of Preston DAVIS's home, 405 B Williams Avenue, Madison, Tennessee, Agents found a 2002 black Pontiac Grand Prix directly behind the residence in the backyard (the "Pontiac"). The Pontiac was registered to Preston DAVIS. In the trunk of the Pontiac, among other things, Agents found a pill press, a white substance, a yellow substance, a heat sealer, and multiple dies for embedding text onto pills. Agents also found a bag of yellow pills.

30. 405 B Williams Avenue, Madison, Tennessee is a two story apartment. There was no furniture in the first floor of the two story residence. On the first floor of the house, Agents observed powder around the fireplace. In the living room, Agents found a package label from "Tabletpress" addressed to Preston DAVIS at 405 B Williams Avenue, Madison, Tennessee. Agents also found a receipt made out to Preston DAVIS at 405 B Williams Avenue, Madison, Tennessee, for 5 kilograms of binder. In my training and experience, I know "binder" to be an ingredient used to manufacture counterfeit pills. In a kitchen cabinet next to the stove, Agents found one yellow pill, which had markings of a Xanax pill. Agents recovered a pill grinder, a sieve, an electric mixer, and other miscellaneous paraphernalia from the kitchen

10

cabinet next to the stove. Above a kitchen cabinet, agents found a crank handle for a pill press, which matched when placed on the pill press found inside the Pontiac. In the closet under the stairs on the first floor, Agents found a green pill.

31. Upstairs, Agents found a plate with green powder on it in the front bedroom closet.

32. During the course of the search, Agents also found an AR-15 DMPS Assault Style Rifle with a 5.56mm magazine and a scope in the closet under the stairs on the first floor.

33. Agents believe the substances found may include fentanyl, but initial testing is not yet available.

34. Of the dies found in the trunk of the Pontiac, one die bore "A333." Counterfeit Percoset bearing A333 are associated with multiple overdoses, some of which resulted in death, in the Murfreesboro area in July of 2016.

35. Based on the results of the search, Agents believe that Falkowski and DAVIS and possibly others used 405 B Williams Avenue, Madison, Tennessee to manufacture counterfeit pills.

### Interview of DAVIS

36. On September 10, 2016, Agents interviewed DAVIS. DAVIS was advised of his Miranda rights and waived them. During the course of the interview, DAVIS acknowledged that 405 B Williams Ave, Madison TN was his residence, and that he and his sister rented the apartment. DAVIS said his sister occasionally stays at the house. He acknowledged that the 2002 Pontiac Grand Prix found in the rear of 405 B Williams Ave, Madison, TN was his, and was broken down. He acknowledged that there was a machine to press pills in the trunk of the

11

car, as well as material he described as a "big ass bag" of "premix." He explained that premix was used in the manufacture of counterfeit pills. He also admitted he received a package of premix on June 30, 2016. He also admitted that he possessed a gun in 405 B Williams Ave, Madison, TN. The only gun found by Agents during the course of the search was an AR-15 DMPS Assault Style Rifle with a 5.56mm magazine in a closet under the stairs. He also admitted that there was a piece of a pill press located "on top of something." During the course of the search, Agents found a piece of a pill press on top of a kitchen cabinet.

37. Furthermore, DAVIS acknowledged that he had distributed controlled substances in the past. He also admitted that the prior evening during the course of an encounter with police officers, police confiscated one Xanax pill and his "weapons" from him.

38. DAVIS acknowledged that he allowed Falkowski to stay in his apartment while Falkowski was in the Tennessee area. He said that Falkowski has his own key to the apartment.

## CONCLUSION

39. In summary, Agents coordinated a controlled buy from Falkowski for pills that appeared to be prescription pills but that testing determined were not prescription pills but were counterfeit pills that contained fentanyl. Falkowski identified DAVIS as one of his distributors. DAVIS allowed Falkowski to stay with him on multiple occasions, and provided him a key. Agents are aware of two wire transfer payments that indicate DAVIS was transferring money to Falkowski. Pursuant to the search of 405 B Williams Avenue, Madison, Tennessee, Preston DAVIS's home address, and DAVIS' vehicle found immediately behind the house, Agents found materials to manufacture counterfeit pills. DAVIS' home did not have any furniture on the first floor and the kitchen contained paraphernalia to manufacture counterfeit pills. Agents also found

12

receipts indicating that DAVIS had received materials to manufacture counterfeit pills, and DAVIS admitted he received at least one package. Based on the results of the search and DAVIS' statements, Agents believe that Falkowski and DAVIS and possibly others used DAVIS' home to manufacture counterfeit pills.

40. Based on these facts, there is probable cause to believe that **Preston DAVIS,** conspired to possess with intent to distribute and to distribute a quantity of controlled substances in violation of Title 21, United States Code Sections 841(a)(1) and 846.